Civil Service Commission, City of Pittsburgh, Appellant, *v.* Victor Joseph, Appellee.

Argued May 7, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Robert B. Smith,* Assistant City Solicitor, with him *Ralph Lynch, Jr.,* City Solicitor, for appellant.

*Peter J. Mansmann,* with him *Mansmann, Beggy, Steele & Campbell,* for appellee.

OPINION BY JUDGE WILKINSON, June 5, 1974:

This is an appeal from the order of the Court of Common Pleas of Allegheny County which sustained appellee's appeal from the decision of the Civil Service Commission of the City of Pittsburgh. The Civil Service Commission of the City of Pittsburgh had sustained the action taken by a Police Trial Board, approved by the Mayor, that appellee be dismissed from the Bureau of Police. The lower court ordered appellee be reinstated with back pay retroactive to the effective date of his discharge. The Common Pleas Court reversed the Civil Service Commission of the City of Pittsburgh on the grounds that the Superintendent of the Bureau of Police prejudiced appellee's opportunity for a fair trial before the Police Trial Board by improperly adding to the Specification of Charges: "Officer Victor Joseph is hereby dismissed from the Bureau of Police effective August 3, 1972." Everyone agrees that the Superintendent did not have authority to dismiss appellee and that the statement had no place on the Specification of Charges, nor is there any question but that counsel for appellee forcefully objected to the Police Trial Board proceeding with the hearing on the Specification of Charges containing the unauthorized and prejudicial statement by the Superintendent.

We agree with the lower court that the inclusion of this improper statement in the Specification of Charges so prejudiced appellee that he could not have a fair trial before the Police Trial Board. However, the court below was in error in ordering appellee's reinstatement. The case should have been remanded to have the offending statement removed from the Specification of Charges, a new Police Trial Board constituted, and a retrial held.

The facts of this case will be stated briefly in a manner most favorable to appellee. On July 15, 1972, appellee, having been a police officer for three years, was serving the last 10 days of a 90-day suspension. This was apparently his second suspension, the previous one being 30 days. During the course of the evening of July 15, appellee had had five glasses of beer. At 8:10 p.m., he placed a telephone call to the No. 9 Police Station to which he had previously been assigned. The lieutenant in charge answered the telephone. Appellee, having identified himself, asked the lieutenant to have Officer Grosskinsky call him, leaving the telephone number of the bar from which appellee was calling. Approximately 45 minutes later, appellee replaced the call to No. 9 Station and spoke to Officer Grosskinsky who said he had not received the message. At the appellee's request, the lieutenant came to the telephone and said he had relayed the message. A dispute followed and the lieutenant hung up the phone. Appellee then proceeded to No. 9 Station. From his own testimony, it is abundantly clear that appellee went "to confront" the lieutenant on why he did not relay the message. When appellee arrived at the Station, he went immediately to the lieutenant and a "fight" or "shoving match" ensued, with the exchange of foul language. Various stages of this "incident" were witnessed by six police officers and a civilian who were called to testify.

The lieutenant initiated a disciplinary action report. The Superintendent of the Bureau of Police prepared a Specification of Charges, specifying a violation of three of the Rules and Regulations:

"Rule 8: A member or employee shall conduct himself at all times in a manner not prejudicial to the reputation or good name of the Bureau of Police.

"Rule 27: A member or employee shall not maliciously threaten, strike or assault any other member or employee of the Bureau of Police. Members or employees who aid, abet or incite any altercation between members or employees of the Bureau of Police shall be held responsible along with those actually involved.

"Rule 52: Members of the Bureau shall render proper respect to commanding officers. The use of indecent, profane, insolent or uncivil language to a member of the Bureau or to civilians is prohibited." He then added the prejudicial statement concerning dismissal quoted above.

At the opening of the hearing before the Police Trial Board, counsel for appellee asked if the members of the Board had read the improper statement. All had read it. He then stated:

"You have read that before I read it to you, is that correct?

"I have in the past, and I do again object to the attempt and the intent of the City to influence members of the Trial Board by prejudging cases and setting the penalty before there is any independent hearing. And for that reason, and that reason alone, I challenge this Board and ask that a new Trial Board be appointed, and this language be stricken from any further charges in this particular case."

Following an exchange between counsel, the Chairman of the Board stated: "When I read the specifications of the charges to Officer Joseph, I did not include that sentence Officer Joseph is hereby dismissed from

the Bureau of Police effective August 3, 1972. Because I agree with you, I don't believe that anyone has the authority to dismiss him before the Trial Board is convened, and I think I speak for both of the other members of this Trial Board when I say that we are going to hear the case and give an impartial judgment on the basis of the evidence presented today, or tomorrow, as long as it may take, and we will make the decision, if he would be found guilty, not according to, or necessarily according to this recommendation."

We do not challenge the Board's sincerity in this statement of the Chairman. However, our Supreme Court has made it quite clear in *Gardner v. Repasky*, 434 Pa. 126, 252 A. 2d 704 (1969), that the tribunal must appear to be unbiased as well as in fact unbiased.[1]

Therefore, we must accede to the request made by counsel for appellee at the beginning of the Trial Board hearing, quoted above, and remand the case.

The only other objection of the appellee requiring comment is whether it is unconstitutional, as a matter of due process, for the Mayor to participate in these proceedings at two stages, once as Acting Director of Public Safety approving the charges, and again as Mayor reviewing the Police Trial Board's findings. A full and complete discussion of this type of situation, holding it not to be a denial of due process, was set forth for this Court by Judge ROGERS in *Dussia v. Barger*, 10 Pa. Commonwealth Ct. 167, 309 A. 2d 607

---

[1] In *Gardner v. Repasky, supra*, because of the long delays in the proceedings, the Supreme Court set aside the suspension rather than sending it back for a rehearing. The original complaint against the police officer's conduct in that case came in October of 1963. There were no hearings before the Civil Service Commission on his appeal from suspension until April and November of 1965, and the Commission did not render its decision until February, 1967. In the case before us, the entire proceedings have been handled with appropriate dispatch and, therefore, a rehearing is indicated.

(1973). The reasoning and result of that case are appropriate here.

Accordingly, we set aside the order of the court below reinstating the appellee and remand the record to the court below for transmittal to the Superintendent of the Bureau of Police for a new Specification of Charges to be prepared, deleting the unauthorized and prejudicial statement concerning dismissal, and for the case to proceed thereafter according to law.